UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ABEL DANIEL BERHE** | **CIVIL ACTION NO. 24-0407** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **TIM DUCOTE** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Petitioner Abel Daniel Berhe,[1] a detainee at Winn Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] For reasons below, the Court should deny the petition.

### Background

Petitioner is a citizen of Eritrea. He also has permanent residency in Sweden. An immigration judge ordered him removed from the United States on July 19, 2023, finding him "inadmissible under the following Section(s) of the Immigration and Nationality Act (INA or Act): 212(a)(6)(A)(i)." [doc. #s 1, p. 2; 10-1, p. 2]. The immigration judge ordered Petitioner removed to Eritrea or, in the alternative, to Sweden. *Id.* at 4. Petitioner did not appeal his order of removal to the Board of Immigration Appeals. [doc. # 1, p. 2].

---

[1] Petitioner's "A-Number" is 246913181.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner filed this petition on approximately March 12, 2024. [doc. # 1, p. 8]. Channeling *Zadvydas v. Davis*, 533 U.S. 678 (2001), he claims: (1) ICE has detained him beyond the removal period, and ICE is not likely to remove him in the near future; and (2) ICE is depriving him of his due process right to liberty by detaining him for a prolonged period. [doc. # 1, p. 6].

Petitioner attaches an article which lists numerous "Events of 2023" in Eritrea. [doc. # 1-2]. The article mentions that forcibly returned Eritreans face risks of persecution, human rights violations, and "incommunicado detention." *Id.* at 4.

Petitioner suggests that he is unlikely to be removed because of "a long-standing error in the ICE Detainee Locator." [doc. # 1-3, p. 1]. He states that the Online Detainee Locator System maintained by ICE lists a different person's name under his A-Number.[3] *Id.*

In an amended petition, Petitioner argues: "[S]hould he be deported without the appropriate documents, he will be placed in detention in Sweden." [doc. # 10, p. 1]. He attaches a timeline of events, in which he states that he was transported to an airport in Newark, New Jersey, on March 26, 2024. [doc. # 10-1, p. 33]. He writes in pertinent part:

> Told he was going home to Sweden. . . . Asked for his Swedish documents to be able to enter Sweden. Told by officer he didn't need documents because he would be accompanied by officer. Again asked to see documents to verify destination. . . . He repeated he agrees to be deported, just needs to see the documents. He doesn't want to go from jail in US to jail in another country because he doesn't have documents. . . . Escorted to plane. Pilot refused entry to plane and pulled their bags off the plane.

*Id.*

---

[3] On March 22, 2024, the undersigned verified that the Online Detainee Locator System did not list Petitioner's name under his A-Number. On March 25, 2024, however, the undersigned observed that ICE rectified the discrepancy, listing Petitioner's name under his A-Number. *See* https://locator.ice.gov/odls/#/results (last visited and verified on September 12, 2024).

2

Respondents answered the petition on August 15, 2024, arguing that Petitioner has failed to establish that there is no significant likelihood of his removal in the reasonably foreseeable future and that, consequently, the Court should deny and dismiss the petition. [doc. # 15, p. 2].

Respondents recount that on November 30, 2023, Petitioner "advised he no longer wished to be removed to Sweden because his girlfriend was pregnant in the United States." [doc. # 15-1, p. 5]. On December 5, 2023, "ICE received Petitioner's Swedish travel documents and resident card from the Swedish consulate." *Id.*

Respondents essentially argue: (1) Petitioner twice refused to board removal flights to Sweden and, on a third attempt, he was combative with staff, and, therefore, the pilot did not allow him to board the flight; (2) Petitioner's travel documents expired during the delays in removal created by Petitioner; and (3) "ICE is currently in the process of obtaining renewed travel documents for Petitioner from the Swedish consulate, which will be issued upon payment of an application fee by ICE, which is currently pending funding by ICE. . . . ICE expects to receive the necessary travel documents to effect Petitioner's removal to Sweden in the near future . . . ." [doc. # 15-1, pp. 3-4, 5, 6, 9].

On August 19, 2024, Petitioner filed a reply to Respondents' Answer, writing in pertinent part: "ICE informed me on July 30, 2024[,] that they have temporary travel documents for me to return back to Sweden. Even though, I have permanent residency in Sweden, but returning with temporary document is unsafe for me. As it would be more likely leading me to imprisonment upon my arrival. . . . I am simply requesting ICE to correct the travel documents to ensure that I will be safely return and keep my lawful status. [sic]." [doc. # 16, p. 1].

3

## Law and Analysis

### I. Overstay in Detention

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[4] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of

---

[4] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

    A. Eritrea

Petitioner attaches an article which lists numerous "Events of 2023" in Eritrea. [doc. # 1-2]. The article mentions that forcibly returned Eritreans face risks of persecution, human rights violations, and "incommunicado detention." *Id.* at 4. Petitioner, however, does not appear to argue that he is entitled to habeas corpus based on the events in the article. And, in any event, the article is immaterial because the government does not state that it is removing Petitioner to Eritrea; rather, as above, it is attempting to remove Petitioner to Sweden, where Petitioner concedes he has permanent residence. [doc. # 16, p. 1]. Accordingly, Petitioner's attached article does not entitle him to any relief.

    B. Petitioner's A-Number

In his initial filing, Petitioner suggested that he is unlikely to be removed because of "a long-standing error in the ICE Detainee Locator." [doc. # 1-3, p. 1]. He stated that the Online Detainee Locator System maintained by ICE lists a different person's name under his A-Number. *Id.*

Petitioner, however, no longer appears to rely on this argument. Indeed, as above, the undersigned verified that ICE rectified the discrepancy, correctly listing Petitioner's name under

5

his A-Number. The issue is thus moot, and the prior discrepancy does not entitle Petitioner to habeas corpus relief.

C. Refusal to Cooperate

Respondents present the declaration of Assistant Field Office Director Robert Ainley, who declares:

> 10) On December 5, 2023, ICE received the Petitioner's Swedish travel documents and Swedish resident card from the Swedish consulate.
>
> 11) On December 16, 2023, the Petitioner refused to board his first removal flight to Sweden.
>
> 12) On March 26, 2024, ICE attempted to remove the Petitioner to Sweden for the second time. ICE transferred the Petitioner to the Newark Liberty International Airport then to Elizabeth, New Jersey for removal via the John F. Kennedy International Airport in New York, NY. The Petitioner refused to board this second removal flight and was ultimately returned to the Winn Correctional Center in Winn Parish, Louisiana.
>
> 13) On or about June 3, 2024, ICE transferred the Petitioner to the Newark Liberty International Airport then to Elizabeth, New Jersey for removal to Sweden. On June 3, 2024, the Petitioner became combative with staff and the flight captain refused to allow the Petitioner to board his removal flight. The Petitioner was ultimately transferred back to the Winn Correctional Center in Winn Parish, Louisiana.

[doc. # 15-1, p. 14].

Petitioner does not dispute Ainley's declarations.[5] At best, Petitioner suggests that he failed to board the third removal flight because he did not have an "opportunity to view the travel and other documents identifying the deportation location." [doc. # 10, p. 1]. He states that he feared detention in Sweden if he arrived there "without the appropriate documents[.]" *Id.* As above, he also states:

---

[5] Petitioner mentions that he did adhere to "ICE instructions[,]" but he is not referring to instructions to cooperate and board removal flights; rather, he is referring to his adherence to instructions to sign and provide documentation. [doc. #s 10, p. 1; 16, p. 1].

> Asked for his Swedish documents to be able to enter Sweden. Told by officer he didn't need documents because he would be accompanied by officer. Again asked to see documents to verify destination. . . . He repeated he agrees to be deported, just needs to see the documents. He doesn't want to go from jail in US to jail in another country because he doesn't have documents. . . . Escorted to plane. Pilot refused entry to plane and pulled their bags off the plane. [sic].

[doc. # 10-1, p. 33].

Petitioner appears to argue only that he was not shown any documents and was thus unable to verify that he had the correct documents to enter Sweden. However, that Petitioner was unable to view the documents or that the officer did not "produce" the documents to him[6] does not mean that the officer did not possess the correct documents and does not excuse or justify Petitioner's combative actions and failure to cooperate.[7] Further, Petitioner seems to be referencing the government's third attempt to place him on a removal flight; he makes no attempt to explain why he failed to board the first two removal flights.

Next, Petitioner alters course and, in his reply to Respondent's Answer, argues that ICE only has "temporary travel documents for [him] to return back to Sweden." [doc. # 16, p. 1]. He conclusorily states, "Even though I have permanent residency in Sweden, [] returning with temporary document[s] is unsafe for me" because it would lead to "imprisonment upon [] arrival." *Id.* Petitioner, however, does not explain why arriving with a "temporary travel document" in a country in which he is a permanent resident will lead to his imprisonment. That aside, and more importantly, his argument is not germane to whether, under *Zadvydas*, there is or

---

[6] [doc. 8, p. 1].

[7] *See Kharash v. Holder*, 2015 WL 920796, at *6 (W.D. La. Mar. 3, 2015) ("[P]etitioner's questioning of the validity of the travel document does not excuse his refusal to board the aircraft. If, as petitioner contends, the travel document turns out to be invalid, the worst that would befall him would be that Sudan would refuse him entry or an intermediate country would refuse him transit.").

is not a significant likelihood of removal in the reasonably foreseeable future. Petitioner does not argue, for instance, that ICE will be unable to remove him from the United States; rather, he only presents a scenario about which he is concerned which might occur *after* removal from the United States.[8, 9]

Next, and most importantly, Petitioner has not cooperated in effecting his removal. He, not ICE, has prolonged his detention and diminished his likelihood of removal (at that time) by overtly thwarting his removal. See *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.") (cited with approval by *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (denying a petition where the petitioner failed to cooperate with efforts to remove him)).[10] If and when Petitioner cooperates by boarding the removal flight and behaving, there will be a significant likelihood of removal in the reasonably foreseeable future. See *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (opining, where the petitioner impeded his removal, that the district court did not err in

---

[8] To reiterate, an immigration judge ordered Petitioner removed. To the extent Petitioner challenges the removal order here, or seeks to reopen his removal proceedings, by raising his concerns about the consequences of removal, "the Real ID Act [] stripped the district courts of jurisdiction over 28 U.S.C. § 2241 petitions attacking removal orders." *Gul v. Rozos*, 163 F. App'x 317, 318-19 (5th Cir. 2006).

[9] *See generally Lopatin v. Chertoff*, 2009 WL 1357445, at *1 (E.D. Cal. May 11, 2009) ("Petitioner asserts that he will be endangered if he returns to Russia. Petitioner's allegations are not relevant to his habeas petition, which concerns only the legality of his post-removal-order detention.").

[10] *See also Lusanga v. Ramos*, 2019 WL 2851759, at *2 (W.D. La. 2019) ("An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.").

8

determining that the petitioner failed to show that there was no significant likelihood of his removal in the reasonably foreseeable future if he cooperated).[11, 12]

Petitioner has not met his initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S.

---

[11] *See also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("In contrast to the petitioner in *Zadvydas*, who could not be removed because the receiving countries refused to accept him, Oladokun's non-cooperation is the only barrier to his removal. The Department could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885 (11th Cir. 2015) (reasoning, where the detainee refused to board a plane, that the petitioner could not meet his burden and that there was a significant likelihood that he would be removed "as soon as he cease[d] obstructing the government's efforts to remove him."); *Iwuoha v. Viator*, 2014 WL 4678860, at *3 (W.D. La. Sept. 19, 2014) ("[I]t is clear that Nigeria is willing to accept Petitioner—travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened. Thus, on the evidence before this court, the undersigned cannot find that Petitioner has established that there is no significant likelihood of removal in the reasonably foreseeable future. . . . Petitioner holds the keys to his freedom, he need only peacefully board the airplane to effectuate his removal and thereby gain his freedom."); *Sam-Kabba v. Napolitano*, 2013 WL 5960670, at *1 (W.D. La. Nov. 6, 2013).

[12] Under 8 U.S.C. § 1231(a)(1)(C), "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal." Applying Section 1231(a)(1), the Fifth Circuit Court of Appeals reasoned in two unpublished opinions that when a detainee fails to cooperate with efforts to remove him, the "removal period" under Section 1231(a)(1)(A), is effectively tolled. *Hook*, 639 F. App'x at 230 (unpub.); *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpub.). Here, Petitioner's actions did not toll the removal period in Section 1231(a)(1)(A), because the removal period expired before Petitioner prevented his removal. His removal order became final on August 18, 2023, thirty days after the immigration judge ordered him removed, and he first prevented his removal *over* ninety days later, on December 16, 2023. [doc. # 15-1, p. 14]. Regardless, it is worth noting that Section 1231(a)(1)(C), "evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him." *Lema v. I.N.S.*, 214 F. Supp. 2d 1116 (W.D. Wash. 2002). Otherwise stated, Congress plainly declined to fault the government for failing to remove a detainee by a deadline when the detainee fails to cooperate in effecting his or her removal.

at 701.  Even assuming, *arguendo*, that he did, Respondents have sufficiently rebutted any such "showing."  *Id.*

      Assistant Field Office Director Ainley declares:

> 14) On or about July 5, 2024, ICE began seeking renewed travel documents from the Swedish consulate.  As of the date of this affidavit,[13] the Swedish consulate has not returned the Petitioner's renewed travel documents.  ICE received a notification from the Swedish consulate that they intend to renew his travel documentation upon payment of the application fee, which is pending funding by ICE.
>
>   . . . .
>
> 16) I believe there is a significant likelihood of the Petitioner's return to Sweden in the reasonably foreseeable future.

[doc. # 15-1, p. 14 (footnote added)].

      Respondents establish that: (1) Sweden is willing to issue travel documentation for Petitioner and has issued such documentation before; (2) Sweden is willing to accept Petitioner; (3) Respondents have thrice attempted to remove Petitioner and were only unsuccessful because Petitioner interfered and failed to cooperate; (4) the travel documents the government obtained expired because of Petitioner's interference; and (5) Respondents are actively attempting to remove Petitioner, communicating with the Swedish consulate and awaiting funding for the travel documentation application fee.  The government is actively attempting to remove Petitioner, and there is no indication that it will not succeed.

      Accordingly, Petitioner's detention remains reasonable.  Petitioner may re-urge his claim if he develops good reason to believe, in light of any changes in circumstance or new evidence—

---

[13] August 2, 2024.

beginning with his full cooperation with efforts to remove him—that his removal is not significantly likely in the reasonably foreseeable future.[14]

**II. Due Process**

Petitioner claims that ICE is depriving him of his due process right to liberty by detaining him for a prolonged period. [doc. # 1, p. 6]. Petitioner, however, grounds his due process claim in his claim of prolonged detention under *Zadvydas*, which essentially outlined the process a removable alien detainee is due in this context. *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e] any person . . . of . . . liberty . . . without due process of law.'").[15] As his claim under *Zadvydas* fails, his due process claim fails. At present, Petitioner has received all the process to which he is due. The Court should dismiss this claim.

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Abel Daniel Berhe's petition be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-urge his claim of prolonged detention if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not likely in the reasonably foreseeable future.

---

[14] *See, e.g., Adefemi v. Gonzales*, 228 F. App'x 415, 416-17 (5th Cir. 2007).

[15] "'*Zadvydas* was . . . explaining that the Government's ability to detain individuals is generally subject to the limitations imposed by the Due Process Clause.'" *Tran v. Mukasey*, 515 F.3d 478, 483 (5th Cir. 2008) (quoting *Tuan Thai v. Ashcroft,* 366 F.3d 790 (9th Cir.2004)). *See Demore v. Kim,* 538 U.S. 510, 527 (2003) ("In *Zadvydas,* the Court considered a due process challenge to detention of aliens . . . .").

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 18th day of September, 2024.

_____
Kayla Dye McClusky
United States Magistrate Judge